IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | Case No. 16-po-6311 |
| v. | * | |
| | * | |
| | * | |
| SHAQUILLE S. AMAKER, | * | |
| | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER OF COURT

In this case, Defendant is charged with driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1); driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(2);[1] unsafe operation of a vehicle, in violation of 36 C.F.R. § 4.22(b)(1); and failing to slow down to avoid an accident, in violation of 36 C.F.R. § 4.2, incorporating Md. Code Ann., Transp. § 21-801(b). At trial the government offered two exhibits into evidence related to Defendant's breath alcohol test. Defendant objected to the admission of both exhibits. The Court admitted the exhibits conditionally and reserved ruling on their admissibility. The government rested its case, and Defendant elected not to present any evidence. For the reasons set forth below, Defendant's objection is **OVERRULED**, and the exhibits will be admitted into evidence.

Two witnesses testified on behalf of the government at the trial. Mr. Augustine Lekettey testified that on May 29, 2016, at approximately 1:40 a.m., he was driving northbound on the

---

[1] A violation of 36 C.F.R. § 4.23(a)(1) is commonly referred to as "driving under the influence," and a violation of 36 C.F.R. § 4.23(a)(2) is commonly referred to as "driving while intoxicated," although the word "intoxicated" does not appear in the regulation. *See, e.g.*, *United States v. Ahlstrom*, 530 F. App'x 232, 233 (4th Cir. 2013).

Baltimore-Washington Parkway[2] when his car was struck from behind.  After the vehicles came to a rest, the two occupants of the striking vehicle approached him.  Mr. Lekettey identified Defendant as one of those persons.  After a brief conversation, Defendant returned to the striking vehicle and sat in the driver's seat.  Some time after the collision, U.S. Park Police Officer Benjamin Tomasiello came upon the scene.  Defendant admitted to Officer Tomasiello that the striking vehicle was his and that he was driving.  Officer Tomasiello noticed an odor of alcohol coming from Defendant's person and that his eyes were bloodshot, watery, and glassy.  Defendant stated that he was coming from the District of Columbia, had been drinking that night, and fell asleep while driving.  Believing that Defendant may be under the influence of alcohol, Officer Tomasiello had Defendant perform the horizontal-gaze nystagmus test.  Because of safety concerns, this was the only standardized field sobriety test that Officer Tomasiello administered.  Officer Tomasiello testified that he has been a patrol officer with the U.S. Park Police for approximately eight years.  He is a certified drug recognition expert and a standardized field sobriety test instructor.  During his career he has personally made more than 300 arrests of suspected drunk drivers and has participated as a backup officer in many others.  After administering the horizontal-gaze nystagmus test to Defendant, Officer Tomasiello placed Defendant under arrest and transported him to the police station.

    At the station, Officer Tomasiello advised Defendant of his rights and asked if Defenant would consent to a breath test.  Defendant indicated that he would consent to a breath test.  Officer Tomasiello testified that he has been a certified breathalyzer operator since 2009.  The equipment that he used to administer the breath test that evening was the Intoximeter EC/IR II (the "Intoximeter").  Officer Tomasiello testified that before administering the test there is a

---

[2] The Baltimore-Washington Parkway is located in Maryland and is in the special maritime and territorial jurisdiction of the United States.

twenty-minute observation period. He advised Defendant that during that observation period Defendant should keep his hands away from his mouth, refrain from burping, hiccupping, and regurgitating anything into his mouth. This is to assure that there is no residual mouth alcohol in Defendant's mouth when the test is administered. He also offered Defendant some water. When the observation period was nearly concluded, Officer Tomasiello entered information related to the case into the Intoximeter and initiated the machine's self-check process to assure that it was working properly. Officer Tomasiello testified that, if the device is not working properly, it will not allow a test to be conducted. The self-check did not show any problems. After the conclusion of the twenty-minute observation period Defendant gave two breath samples.

At trial Officer Tomasiello identified two exhibits offered by the government related to the breath test. Exhibit 1 is a one-page document titled "United States Park Police, Traffic Safety Unit – Breath Testing Instrument Certification Notice." Exhibit 1 is dated May 11, 2016, and states the following:

> To Whom It May Concern:
>
> This notice certifies that Intoximeter EC/IR II, serial number 010688, has been tested and found to be suitable for use in analyzing breath alcohol for evidential purposes. The instrument conforms to the standards required by the United States Department of Transportation for evidential breath alcohol measurement.
>
> Dry gas standards with National Institute of Standards and Technology traceability are approved for use with this instrument.

The document is signed by Officer Pentti Gillespie, Technician, Intoximeter EC/IR II, U.S. Park Police Traffic Safety Unit. The document further provides at the bottom:

> Date Instrument Certified: May 11, 2016
>
> Date Instrument Certification Expires: August 09, 2016

Officer Tomasiello testified that Exhibit 1 was the certification notice for the Intoximeter he used to test Defendant's breath. Officer Tomasiello testified that he is personally familiar with Officer Gillespie. He testified that Officer Gillespie comes to the police station periodically to perform the certification tests on the Intoximeter. He testified that, after conducting the certification test, Officer Gillespie prepares the certification notice and leaves a copy at the station, where it is kept in a binder in the sergeant's office. To his knowledge and on the basis of information he has received from Officer Gillespie, he testified that Exhibit 1 was made at or near the time Officer Gillespie performed the certification test, that Exhibit 1 was kept in the course of a regularly conducted activity of the U.S. Park Police, and that the preparation of Exhibit 1 was a regular practice of the U.S. Park Police. On cross examination, Officer Tomasiello admitted that he has never been present when Officer Gillespie has conducted a certification test and prepared the certification notice. He admitted that he had nothing to do with the preparation of Exhibit 1.

Officer Tomasiello identified Exhibit 2 as the results of Defendant's breath test. Exhibit 2 is a one-page document titled "Intox EC/IR – II: Subject Test." The top of the form shows information related to the case, including Defendant's name, date of birth, and driver's license number; the date and time of the test; the date and time of the arrest; the name of the arresting officer; the instrument certification date (05/11/2016); the certification expiration date (08/09/2016); the Dry Gas Target (.080); and the phrase "System Check: Passed." The middle of the form contains information reflecting the actual test results, after which is printed the word "Success." Below the test results is the following printed statement:

> I CERTIFY THAT THE BREATH SAMPLE RESULTS(S) ABOVE WERE ANALYZED BY AN INSTRUMENT THAT HAS BEEN APPROVED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA) AS CONFORMING TO THE MODEL SPECIFICATIONS FOR EVIDENTIAL

> BREATH ALCOHOL MEASUREMENT DEVICES; THAT THE DRY GAS STANDARDS USED WITH THIS INSTRUMENT HAVE NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY TRACEABILITY; THAT THE TESTING PROCEDURES MEET NHTSA RECOMMENDATIONS AND MANUFACTURER'S SPECIFICATIONS; THAT THE INSTRUMENT WAS CERTIFIED AS ACCURATE WITHIN THE PAST 90 DAYS BY A UNITED STATES PARK POLICE TECHNICIAN WHO IS CERTIFIED BY THE INSTRUMENT MANUFACTURER TO CALIBRATE AND CONDUCT ACCURACY CHECKS WITH THIS INSTRUMENT; THAT I AM CERTIFIED TO CONDUCT SUCH TESTING; AND THAT I FOLLOWED SET PROCEDURES WHILE OBTAINING THE ABOVE BREATH SAMPLE RESULT(S).

Below the certification are the signatures of Officer Tomasiello and Defendant. The printout reported the results of the two breath tests as .085 and .082 grams of alcohol per 210 liters of breath.

Defendant objects to the admission of these exhibits. In regard to Exhibit 1, Defendant argues that the government did not lay a proper foundation for the admission of the exhibit as a business record under Fed. R. Evid. 803(6) and that Officer Tomasiello was not the custodian of records or other "qualified witness" who could lay the foundation for the exhibit's admission. Defendant also objects to the admission of Exhibit 2 on the ground that the admissibility of Exhibit 2 depends on the admissibility of Exhibit 1.

As mentioned above, Defendant is charged with violating two alcohol-related driving offenses. He is charged with driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1). That section provides that it is unlawful to operate or be in actual physical control of a motor vehicle while under the influence of alcohol or a drug or drugs or any combination thereof to a degree that renders the operator incapable of safe operation of the vehicle. In order to obtain a conviction of this regulation, the government must prove Defendant was under the influence of alcohol, but it does not have to prove that the alcohol concentration of Defendant's breath or blood was at a specific level. Defendant is also charged with driving while intoxicated,

in violation of 36 C.F.R. § 4.23(a)(2). That section provides that it is unlawful to operate or be in actual physical control of a motor vehicle while the alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Therefore, in order to convict Defendant of this regulation, the government must prove that the alcohol concentration in Defendant's breath was 0.08 grams or more of alcohol per 210 liters of breath. Further, the test for the presence of alcohol shall be determined by and administered at the direction of an authorized person, 36 C.F.R. § 4.23(c)(3), and shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use, *id.* § 4.23(c)(4).

### A.   Exhibit 1 (Breath Testing Instrument Certification Notice)

Defendant relies on two district court cases from the Fourth Circuit in support of his position. In *United States v. Webb*, 12 F. Supp. 3d 816 (S.D.W. Va. 2013), the defendant was charged on September 13, 2012, with a violation of 36 C.F.R. § 4.23(a)(2). During the trial before United States Magistrate Judge R. Clarke VanDervort, the government introduced a printout of the results of the defendant's breath test. The printout indicated that on September 13, 2012, "Lieutenant Ragland used an Intox EC/IR II intoximeter to test Defendant. The printout indicates "System Check: Passed," Defendant's blood alcohol concentration at 4:20 that morning as .094 grams of alcohol per 210 liters of breath, and then "Test Status: Success." *Webb*, 12 F. Supp. 3d at 819 n.2. The printout did not contain an attestation clause. *Id.* The government did not, however, introduce any document similar to Exhibit 1 certifying the accuracy of the EC/IR II intoximeter when the defendant was tested or the test result. Therefore, Webb does not support Defendant's argument in regard to the admissibility of Exhibit 1.

6

Defendant also relies on *United States v. Foster*, 829 F. Supp. 2d 354 (W.D. Va. 2011). In *Foster*, the defendant was charged on April 3, 2011, with speeding and driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1). At trial, the government introduced the Certificate of Instrument Accuracy for the Intox EC/IR II Intoximeter used to conduct the defendant's breath test. The government introduced the Certificate of Instrument Accuracy through the testimony of Ranger Smith, the officer who administered the breath test on the defendant. The Certificate was signed by Melissa Kennedy, Section Supervisor, Virginia Department of Forensic Science. The Certificate did not refer to the defendant in any way and concerned the accuracy of the Intoximeter itself. The Certificate indicated that the Intoximeter used to conduct the defendant's test was certified as of March 10, 2011, as meeting "all requirements for accuracy and performance established by the Department of Forensic Science." *Foster*, 829 F. Supp. 2d at 359. The defendant objected to the admission of the Certificate on the ground that it was inadmissible hearsay.

United States District Judge Michael F. Urbanski considered whether the Certificate of Instrument Accuracy was admissible as a business record under Fed. R. Evid. 803(6). Rule 803(6)(D) provides that the foundation for the admission of a business record must be laid by the testimony of the custodian of records or another qualified witness, or by a certification that complies with Fed. R. Evid. 902(11) or (12) or with a statute permitting certification. Judge Urbanski found that Ranger Smith was not the custodian of records for the Department of Forensic Science and that the Certificate failed to contain a proper certification under Rule 902(11). The issue, therefore, was whether or not Ranger Smith was a "qualified witness" under Rule 803(6)(D). "A qualified witness is not required to have personally participated in or observed the creation of the document, or to have known who actually recorded the information.

7

There is no requirement that the witness be able to personally attest to its accuracy." *Id.* at 364 (alteration in original) (quoting *United States v. Sofidiya*, No. 97-4681, 1998 WL 743597, at *3 (4th Cir. Oct. 23, 1998) (per curiam) (unpublished table decision)). Judge Urbanski noted that the term "qualified witness" "is interpreted broadly and 'requires only someone who understands the system used to record and maintain the information.'" *Id.* (quoting *Sofidiya*, 1998 WL 743597, at *3). "[H]e or she must be familiar with the creation and record keeping procedures of the organization in order to establish the record's trustworthiness." *Id.* (alteration in original) (quoting *United States v. Williams*, No. 3:10-CR-130, 2010 WL 2802457, at *2 (E.D. Va. July 14, 2010)).

Judge Urbanski ruled that the Certificate was inadmissible, finding that the government failed to establish that Ranger Smith was an "otherwise qualified witness" under Fed. R. Evid. 803(6) who could lay the foundation for the admission of the Certificate. Ranger Smith offered no testimony regarding the creation of the Certificate and whether it was made contemporaneously with testing by a person with knowledge. Ranger Smith did not know Melissa Kennedy, did not know whether she performed the testing and certification of the machine herself, and did not know whether the machine was calibrated properly at the time it was tested. His testimony did not establish that he was familiar with the creation and record-keeping procedures of the Department of Forensic Science. Ranger Smith was not tasked personally with maintaining the machine and had no knowledge of the machine's maintenance aside from what was set forth on the Certificate. *Id.*

Here, Officer Tomasiello acknowledged that he is not the custodian of records for the U.S. Park Police. The Court finds, however, that, on the basis of his testimony regarding his familiarity with the creation of Exhibit 1 and the record-keeping practices of the U.S. Park

Police, the govenment has established that Officer Tomisiello fits within the broad definition of who may be a "qualified witness" under Fed. R. Evid. 803(6). Therefore, Defendant's objection to the admissibility of Exhibit 1 is **OVERRULED**.

B.     **Exhibit 2 (Intox EC/IR-II: Subject Test)**

Defendant also challenges the admissibility of Exhibit 2, the printout of the breath test results. Similar challenges were also raised in *Webb* and *Foster*. In *Webb*, Judge VanDervort ruled that the defendant's breath test results were admissible in evidence, but regarded them as only demonstrating that the defendant had consumed alcohol on the night in question, not for the specific breath alcohol content determined by the test. The court noted that the officer who administered the test was certified to operate the instrument and that it was undisputed that the EC/IR II Intoximeter unit was generally regarded as reliable. The court found, however, that the government did not introduce any evidence to prove the accuracy of the instrument at the time the defendant was tested. Significantly, in examining the printout the court observed that "[t]he record contains no self-proving attestation or certification of accuracy or analysis . . . , and the United States presented no witness to prove otherwise that the test results were accurate." *Webb*, 12 F. Supp. 3d at 825. Therefore, the court found the defendant not guilty of driving while intoxicated under 36 C.F.R. § 4.23(a)(2) because the government did not prove that on the night in question the defendant's breath alcohol level was .08 or more.

Likewise, in *Foster*, Judge Urbanski ruled that the printout of the breath test results was admissible under the business records exception to the hearsay rule, but considered the results only to establish that the defendant had consumed alcohol on the night in question, not for the specific breath alcohol content determined by the test. The court noted that the government offered almost no evidence to establish that the instrument had been appropriately maintained,

9

tested for accuracy, and was functioning properly on the night in question. In regard to the printout itself, the court observed:

> Ex. 2's attestation clause states only that the certificate is an accurate record of the test conducted, that the test was conducted using the type of equipment and in accordance with methods approved by the Department of Forensic Science, that the test was conducted in accordance with the Department's specifications, and that the operator possessed a valid license to conduct such a test. . . . It says nothing about whether the testing equipment had been tested for accuracy and was working properly at the time of the test.

*Foster*, 829 F. Supp. 2d at 368. The court concluded that, without evidence establishing that the instrument used in the testing of the defendant's breath had been maintained appropriately and was working properly on the night in question, it could not give the specific breath alcohol test reading any significant weight.[3] *Id.* at 369.

Defendant's reliance on *Webb* and *Foster* is, therefore, misplaced, as both courts found that the breath test results were admissible in evidence. Both courts concluded, however, that the breath test results were not to be afforded significant weight.

In 2013, the Fourth Circuit addressed the issue of the admissibility of breath test results in the case of *United States v. Ahlstrom*, 530 F. App'x 232 (4th Cir. 2013). In *Ahlstrom*, United States Park Police Officer Pentti Gillespie (ironically the same officer that signed Exhibit 1) arrested the defendant for driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1); driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(2); and operating a vehicle without a tag light, in violation of 36 C.F.R. § 4.2, incorporating Va. Code Ann. § 46.2-1013. After the arrest, Officer Gillespie transported the defendant to the station, where he

---

[3] The defendant in *Foster* also objected to the admission of the both exhibits on the ground that it violated his rights under the Confrontation Clause, citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The trial court rejected that argument. Although Defendant Amaker does not expressly raise a Confrontation Clause argument, the Court also would find that the admission of Exhibits 1 and 2 does not violate Defendant Amaker's rights under the Confrontation Clause.

administered a breath test using the Intoximeter EC/IR-II. Officer Gillespie testified that he was a trained and certified operator of the Intoximeter and that he had administered hundreds of tests using that instrument on individuals suspected of driving under the influence. He testified that he observed the defendant for twenty minutes before administering the test to ensure that the defendant did not burp, belch, or hiccup and that he provided the defendant with water to rinse out her mouth. He also testified that the Intoximeter was operating properly at the time, explaining that the device undergoes a self-test before use and is designed to disable itself if a malfunction is detected. *Ahlstrom*, 530 F. App'x at 235. The test results were memorialized in a printout generated by the Intoximeter, which was entered into evidence over objection. The first test reported a result of 0.114 grams of alcohol per 210 liters of breath, and the second test reported a result of 0.116 grams of alcohol per 210 liters of breath. The court noted that Officer Gillespie was not personally involved with the maintenance of the device. Significantly, in regard to the printout, the Court observed that it reflected that the device had been certified for accuracy on November 14, 2011, less than two months before it was used to test the defendant's breath. Further, the Court observed that the printout included the following attestation clause:

> I CERTIFY THAT THE BREATH SAMPLE RESULT(S) ABOVE WERE ANALYZED BY AN INSTRUMENT THAT HAS BEEN APPROVED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA) AS CONFORMING TO THE MODEL SPECIFICATIONS FOR EVIDENTIAL BREATH ALCOHOL MEASUREMENT DEVICES; THAT THE DRY GAS STANDARDS USED WITH THIS INSTRUMENT HAVE NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY TRACEABILITY; THAT THE TESTING PROCEDURES MEET NHTSA RECOMMENDATIONS AND MANUFACTURER'S SPECIFICATIONS; <u>THAT THE SCIENTIFIC ASPECTS OF THE BREATH TESTING PROGRAM ARE OVERSEEN BY THE DISTRICT OF COLUMBIA'S CHIEF/DEPUTY CHIEF TOXICOLOGIST;</u> THAT THE INSTRUMENT WAS CERTIFIED AS ACCURATE WITHIN THE PAST 90 DAYS BY A UNITED STATES PARK POLICE TECHNICIAN WHO IS CERTIFIED BY THE INSTRUMENT MANUFACTURER TO CALIBRATE AND CONDUCT ACCURACY CHECKS WITH THIS INSTRUMENT; THAT I AM CERTIFIED TO CONDUCT SUCH TESTING; AND THAT SET

PROCEDURES WERE FOLLOWED WHILE OBTAINING THE ABOVE BREATH SAMPLE RESULT(S).

*Id.* (emphasis added).[4]

The magistrate judge admitted the printout into evidence at trial over the defendant's objection. The court convicted the defendant of driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(2). It merged the citation for driving under the influence with the conviction. On appeal, the district court found that the Intoximeter test results were admissible and sufficient to support the conviction. *Id.* at 235-36. The defendant then appealed to the Fourth Circuit.

The defendant asserted on appeal that the Intoximeter was not shown to be "equipment of proven accuracy and reliability," as required under 36 C.F.R. § 4.23(c)(4). She argued that the test results were improperly admitted into evidence at trial because there was insufficient evidence to prove that the instrument was functioning accurately at the time the test was administered. The Fourth Circuit noted, however, that § 4.23(c)(4) does not impose a heightened standard for the admissibility of machine-generated evidence. *Id.* at 238. The court referred to its opinion in *United States v. Washington*, 498 F.3d 225 (4th Cir. 2007). In *Washington*, the Fourth Circuit considered the admissibility of a toxicologist's opinion that the defendant's blood sample contained phencyclidine and alcohol, which opinion was based on the raw data generated by the lab's diagnostic machines. The court stated that concerns about the reliability of machine-generated information is addressed through the process of authentication.

> When information provided by machines is mainly a product of "mechanical measurement or manipulation of data by well-accepted scientific or mathematical techniques," reliability concerns are addressed by requiring the proponent to show that the machine and its functions are reliable, that it was correctly adjusted or calibrated, and that the data (in this case, the blood) put into the machine was accurate (i.e., that the blood put into the machine was the defendant's).

---

[4] The attestation clause in Exhibit 2 is identical to the attestation clause on the printout in *Ahlstrom* except for the underlined portion above, which does not appear in Exhibit 2.

12

*Id.* at 239 (quoting *Washington*, 498 F.3d at 231).

Applying the standard set forth in *Washington*, the Fourth Circuit held that the evidence presented at trial adequately supported the admissibility of the Intoximeter test results. The court first observed that the Intoximeter and its functions were shown to be generally reliable and accurate. It noted that, according to the Intoximeter's attestation clause, the device "ha[d] been approved by the National Highway Traffic Safety Administration (NHTSA) as conforming to the model specifications for evidential breath alcohol measurement devices." *Id.* (alteration in original). Second, the court observed that evidence was introduced at trial to show that the Intoximeter was accurately calibrated at the time the test was administered. It noted that the Intoximeter's attestation clause indicated that the device had been "certified as accurate within 90 days by a United States Park Police technician who is certified by the instrument manufacturer to calibrate and conduct accuracy checks." *Id.* at 240. In fact, the instrument had been calibrated less than two months before the defendant's test. The court also credited Officer Gillespie's testimony that he was well trained in the use of the Intoximeter, that the Intoximeter is designed to conduct a self-diagnostic test before use and will take itself out of operation if a malfunction is detected, and that the self-diagnostic test did not reveal any problems. Finding no error in the trial court's admission of the test results or in its determination to ascribe significant weight to the test results, the Fourth Circuit observed:

> Here, the attestation clause produced as part of the Intoximeter's test results provided evidence of accuracy, on the face of the printout. As noted, it had been calibrated for accuracy within the past two months, and was approved for evidential use by the NHTSA. Moreover, Officer Gillespie was familiar with the self-test functionality based on his personal experience in administering hundreds of tests, even if he lacked knowledge of the self-test's design.

*Id.*[5]

As mentioned earlier, the attestation clause in Exhibit 2 is virtually identical to the attestation clause on the breath test results printout in *Ahlstrom*. Further, the testimony of Officer Tomasiello in regard to the administration of the defendant's breath test is substantially similar to the testimony of Officer Gillespie in *Ahlstrom*. The Court, therefore, finds that the government has properly authenticated the breath test results and the defendant's objection to the admission of Exhibit 2 is **OVERRULED**.

Date: June 21, 2017                             /s/
                                              Thomas M. DiGirolamo
                                              United States Magistrate Judge

---

[5] In *Ahlstrom*, apparently the only record offered by the government to establish the results of the defendant's breath test was the printout generated by the Intoximeter. It does not appear that the government offered a separate certificate of accuracy similar to Exhibit 1 or like the one admitted in *Foster*. Nevertheless, the Fourth Circuit found that the attestation clause on the test results printout alone provided the required proof of reliability and accuracy, and further found that the trial court did not err in finding that the printout established the defendant's specific breath alcohol level of 0.08 grams of alcohol or more per 210 liters of breath.